836 F.2d 87
 18 Envtl. L. Rep. 20,489
 NATURAL RESOURCES DEFENSE COUNCIL, INC., the Parks Council,
Inc., Hudson River Sloop Clearwater, Inc., Terence H.
Benbow, Eleanor Todd, Ross Sandler, Paul Reitman,
Wilberforce D. Simmons, Virdell M. Sanders, Antoinette C.
Jackson, and Gloria Verdell, Plaintiffs-Appellants,
v.
John O. MARSH, Jr., as Secretary of the Army, Department of
the Army, John Lehman, as Secretary of the Navy, William J.
Ryan, as Director of the Navy Resale and Support Office,
Department of the Navy, and James G. Watt, as Secretary of
the Interior, Defendants-Appellees.
 No. 1141, Docket 86-6272.
 United States Court of Appeals,
Second Circuit.
 Submitted June 9, 1987.
Decided Dec. 24, 1987.
 
 James Thorton, New York City, for plaintiffs-appellants.
 Robin L. Greenwald, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y., Andrew J. Maloney, U.S. Atty., and Robert L. Begleiter, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y., for defendants-appellees.
 Before VAN GRAAFEILAND, KEARSE and MAHONEY, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 Natural Resources Defense Council, Inc. (NRDC) appeals from that portion of a judgment of the United States District Court for the Eastern District of New York (Neaher, J.) which upholds the Secretary of the Army's transfer to the Navy of certain land located within the boundaries of a proposed Gateway National Recreation Area. We affirm.
 
 
 2
 The Gateway National Recreation Act (Gateway Act), passed by Congress in 1972, established the geographic boundaries of the Gateway National Recreation Area, approximately 26,172 acres located in and around the New York Harbor. 16 U.S.C. Sec. 460cc(a). Fort Wadsworth, a 226-acre Army installation on Staten Island, was part of the designated site. The Gateway Act provides that federal property such as Fort Wadsworth "may" be transferred to the Secretary of the Interior for administration as part of the recreation area, "[w]ith the concurrence of the agency having custody thereof." 16 U.S.C. Sec. 460cc-1(b).
 
 
 3
 In the late 1970's, the Army began to phase out its activities at Fort Wadsworth, and, in 1979, it expressed an intention to transfer all but twelve acres of the Fort to the Secretary of the Interior. Prior to the intended transfer, however, the Department of Defense directed the Army to retain an additional twenty-eight acres for military housing purposes. Accordingly, the Army offered only 186 acres to the Secretary of the Interior. The Secretary rejected this offer with the suggestion that the Army retain and care for Fort Wadsworth until the entire site became available for transfer.
 
 
 4
 Thereafter, the Navy decided to relocate its Naval Resale Exchange Store headquarters from a deteriorating Brooklyn warehouse to a ten-acre parcel of land at Fort Wadsworth. Upon learning of the Navy's decision, NRDC commenced this suit to prevent the transfer of the ten-acre parcel to the Navy and to compel the Secretary of the Interior to accept all excess Fort Wadsworth property. NRDC argued that, once the Army no longer needed Fort Wadsworth land to support Army uses existing in 1972, the Gateway Act required the Army to transfer the land to the Secretary of the Interior for inclusion in the recreation area.
 
 
 5
 In a decision since vacated to accommodate changing facts, the district court held that the Gateway Act did not prohibit the proposed transfer to the Navy and that Interior was required to accept the excess land at Fort Wadsworth tendered by the Department of the Army. 568 F.Supp. 1387, 1391-94 (E.D.N.Y.1983). However, before any transfer of "excess land" was made, the Department of Defense announced that the Navy proposed to locate a homeport for the USS IOWA on Staten Island and that this might require Naval occupation of Fort Wadsworth. Pending the Navy's decision with regard to its potential occupation of Fort Wadsworth, the district court granted NRDC's motion to vacate the district court's prior judgment and order.
 
 
 6
 In August 1986, the Navy announced its decision to implement proposed plans for construction of the Staten Island homeport facility and the use and possession of all but thirty acres of Fort Wadsworth. 51 Fed.Reg. 30,693 (August 28, 1986). NRDC again challenged the transfer of portions of Fort Wadsworth to the Navy as violative of the Gateway Act. The district court adhered to its earlier ruling on the law, and, in a judgment dated December 8, 1986, approved the Army's transfer to the Navy of all but thirty acres of Fort Wadsworth. This appeal is from that portion of the district court's judgment.
 
 DISCUSSION
 
 7
 Although the district court's 1983 decision was vacated, appellants cite it as holding that 176 acres of land at Fort Wadsworth were in excess of military needs and hail it as "a pragmatic solution to a difficult problem." Appellant's Brief at 3. We believe, however, that the district court's thoughtful discussion was a sound theoretical analysis of the law and that the law, as interpreted by the district court, was as applicable to the facts as they existed in 1986 as it was to the facts in 1983. However, since appellants claim stronger factual support for their contentions in 1986 (196 acres retained versus 50 acres), we deem it advisable to demonstrate the continued applicability of Judge Neaher's 1983 opinion.
 
 
 8
 This Country's experience in World War II convinced Congress of the need for more coordination among our land, sea and air forces. S.Rep. No. 366, 81st Cong., 1st Sess., reprinted in 1949 U.S.Code Cong.Serv. 1771, 1772. However, although there was general agreement as to the need for a "tightly knit core of land, sea, and air power," there was no consensus as to how complete the integration should be. Id. The legislation that resulted, the National Security Act of 1947, Pub.L. No. 80-253, 61 Stat. 495, was a compromise, a starting point along the road to possible eventual unification. 1949 U.S.Code Cong.Serv. at 1772-73.
 
 
 9
 Within two years of the adoption of the 1947 Act, substantial changes were made. See National Security Act Amendments of 1949, Pub.L. No. 81-216, 63 Stat. 578. The principal amendments converted the "National Military Establishment" described in section 201 of the Act into the "Department of Defense" and made it an executive department of the Government. As part of the same process, Congress converted the Departments of the Army, Navy and Air Force from executive departments into military departments within the Department of Defense. See id. Sec. 4.
 
 
 10
 Additional amendments followed. In 1956, Congress provided that a department within the Department of Defense might furnish supplies to any other department within the Department of Defense without reimbursement, if its own department head approved. Pub.L. No. 84-1028, Sec. 2571(a), 70A Stat. 1, 143 (codified as amended at 10 U.S.C. Sec. 2571(b)). In 1958, Congress broadened this provision to provide that "[i]f either of the Secretaries concerned requests it and the other approves, supplies and real estate may be transferred, without compensation, from one armed force to another." Pub.L. No. 85-861, Sec. 1(49)(B), 72 Stat. 1437, 1459 (codified as amended at 10 U.S.C. Sec. 2571(a)).
 
 
 11
 In other revisions, Congress provided for the appointment of seven Assistant Secretaries of Defense. Pub.L. No. 87-651, Sec. 202, 76 Stat. 506, 518 (codified as amended at 10 U.S.C. Sec. 136). One of the present appointees bears the title of Assistant Secretary of Defense (Manpower, Installations, and Logistics). 32 C.F.R. Sec. 352.1(a). His duties include oversight and participation in programs involving "[i]nstallations and real property planning, design, acquisition, maintenance, and disposal" and "[m]ilitary base structure and utilization". Id. Secs. 352.4(gg) and 352.4(hh). In the performance of his assigned functions, this Assistant Secretary is directed to "[u]se existing facilities and services of the Department of Defense or other federal agencies, whenever practicable ... to achieve maximum ... efficiency, and economy." Id. Sec. 352.5(a)(2). Moreover, the military departments in the Department of Defense are directed to assist each other in the accomplishment of their respective functions including the provision of facilities, equipment and supplies. Id. Sec. 368.5(b)(11).
 
 
 12
 The thrust of these statutes and regulations is clear. Although unification of the armed forces has not been accomplished, it is appropriate in some circumstances to act as if it had been. One such circumstance is the uncompensated-for transfer of property from one Defense department to another for reasons of efficiency and economy. We agree with appellees that nothing in the Gateway Act evidences a congressional intent to preclude this modest effort at inter-service cooperation.
 
 
 13
 Our consideration of whether the Gateway Act prohibits the transfer of the Fort Wadsworth property must begin with the language of the statute itself:
 
 
 14
 With the concurrence of the agency having custody thereof, any Federal property within the boundaries of the recreation area may be transferred, without consideration, to the administrative jurisdiction of the Secretary [of the Interior] for administration as part of the recreation area.
 
 
 15
 16 U.S.C. Sec. 460cc-1(b).
 
 
 16
 Although the Gateway Act includes Fort Wadsworth within the boundaries of the Gateway National Recreation Area, the Act specifies no time for the Fort's transfer to the Department of the Interior and imposes no limitations on the Department of Defense's intervening use. Had Congress intended to require the Department of Defense to transfer Fort Wadsworth to the Secretary of the Interior promptly upon the termination of its then existing use by the Army, Congress easily could have said so, as it did in the Golden Gate National Recreation Area Act, 16 U.S.C. Secs. 460bb-460bb-5, passed just two days before the Gateway Act.
 
 
 17
 When the proposed Gateway Act was submitted to the House of Representatives by the Committee on Interior and Insular Affairs, H.R. 1121, it contained a transfer provision similar to that of the Golden Gate Act. Specifically, the bill provided that federal property within the boundaries of the recreation area would be transferred immediately to the Secretary of the Interior "subject to the continuation of such existing uses as may be permitted by the Secretary for such reasonable periods as may be agreed upon with the head of the agency formerly having jurisdiction over the property." H.R.Rep. No. 1121, 92d Cong., 2d Sess., 118 Cong. Rec. 32,142 (1972). Representative Stratton, a member of the House Committee on Armed Services, opposed this transfer provision as inconsistent with the House Armed Services Committee's authority to determine whether or not property in the custody of the Defense Department should be considered excess. Id. at 32,139-40. See 10 U.S.C. Sec. 2662. In addition, Representative Stratton noted that the Army had declared that no portion of Fort Wadsworth could be relinquished at the present time and some portions of the installation would not become excess to military requirements within the foreseeable future. Representative Stratton proposed an amendment, which was adopted almost verbatim and is the above quoted section 460cc-1(b).
 
 
 18
 During its consideration of the Gateway Act bill, Congress could not have been unaware of the procedures for transfers of property within the Department of Defense, which Congress itself had authorized. See discussion of 10 U.S.C. Sec. 2571(a), supra. Indeed, when a representative of the Defense Department was testifying before the Subcommittee on National Parks and Recreation of the House Committee on Interior and Insular Affairs, he confirmed the expressed understanding of a Committee member that "whenever any special service of the Department of Defense no longer has use for an area, then it is offered to another service in the Defense first." Hearings on H.R. 1370, 92d Cong., 1st Sess. 305 (1971).
 
 
 19
 We agree with the district court that it was the congressional intent that only such lands as were in excess of the needs of the Department of Defense would be transferred to the Secretary of the Interior. 568 F.Supp. at 1392. The judgment of the district court is affirmed.